IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PHILLIP CHIPPING, an individual,<br><br>　　　　　　　　　　Plaintiff,<br>v.<br><br>FLEMING LAW FIRM, PLC, a Michigan Professional Domestic Limited Liability Company, SHERRI T. FLEMING, an individual, and DOES 1 through 50,<br><br>　　　　　　　　　　Defendants. | **MEMORANDUM DECISION and ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:11-CV-783 DN<br><br>District Judge David Nuffer |

Defendant Fleming Law Firm's and Defendant Sherri T. Fleming's Motion to Dismiss for Lack of Personal Jurisdiction (Motion to Dismiss)[1] is before the court. The court has carefully reviewed the motions, memoranda, relevant legal authorities and other materials submitted by the parties. For the reasons set forth below, the Motion to Dismiss is DENIED.

## Introduction

In late 2010, Plaintiff Phillip Chipping (Chipping), a Utah resident, contacted Gene Parrish (Parrish), a Utah resident, to identify possible investment opportunities.[2] Parrish informed Chipping about an investment opportunity with LYS Consulting (LYS), in which Chipping decided to invest.[3] To facilitate the investment, LYS requested that an escrow account be set up with the Fleming Law Firm in Atlanta, Georgia.[4]

---

[1] Motion to Dismiss, docket no. 8, filed October 5, 2011.

[2] Complaint at 2–3, docket no. 2, filed August 29, 2011.

[3] *Id.* at 3.

[4] *See id.* at 2–3.

The Fleming Law Firm is a Michigan Professional Domestic Limited Liability Company with its principal place of business located in Atlanta, Georgia.[5] Sherri T. Fleming is an attorney for the Fleming Law Firm.[6] Fleming communicated with Parrish regarding Chipping's investment and sent a letter to Parrish requesting that Chipping deposit $250,000.00 in the Fleming Law Firm's Commercial Escrow Account.[7] Fleming's letter was sent on December 25, 2010, and was addressed to Mr. Gene Parrish at his home address in Utah.[8] The letter stated "I will irrevocably return your $250,000.00, to the account you sent it from within 15 banking days from the time it is received, as well as an additional $250,000.00 as a participation fee for your involvement."[9]

On December 27, 2010, Chipping transferred $250,000.00 from his personal bank account to the Fleming Law Firm's Commercial Escrow Account, as instructed.[10] That same day, Parrish sent an email to Fleming notifying her that the funds had been transferred.[11] Parrish's email signature included Parrish's home address in Utah.[12] Fleming sent Parrish the following email in response:

> I have received your $250,000.00 wire per [sic] and I have wired $240,000.00 to LYS Consultant Firm, LLC (LYS) per your agreement with LYS. Also, as per your agreement with LYS, your wire of $240,000.00 will be used for

---

[5] *Id.* at 1.

[6] *Id.* at 2.

[7] *Id.* at 3.

[8] *See* Letter from Sherri Fleming, Attorney, Fleming Law Firm, to Gene Parrish (Dec. 25, 2010), Exhibit D to Notice of Errata, docket no. 14-5, filed October 6, 2011; *see also* Complaint at 3.

[9] *Id.*

[10] Complaint at 4.

[11] *Id.*

[12] *See* Email from Gene Parrish to Fleming Law Firm (Dec. 27, 2010), Exhibit E to Notice of Errata, docket no. 14-6, filed October 6, 2011.

2

banking cost and you shall receive your wire amount plus a participation fee of $250,000.00 to the account from which they were sent.[13]

On January 31, 2011, Parrish notified Fleming that Chipping's funds had not been returned to him as promised.[14] Fleming sent an email to Parrish stating that Chipping's funds would be returned upon further instruction from LYS.[15] By August 2011, Chipping had not received any money in return from his investment, so Chipping filed suit against the law firm and Fleming.[16] The law firm and Fleming filed this Motion to Dismiss claiming lack of personal jurisdiction.[17]

## DISCUSSION

"The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing."[18] Further, a court considers the allegations in the complaint to be true, and "all factual disputes are resolved in the plaintiff's favor."[19] Therefore, Chipping bears the burden of establishing personal jurisdiction over the Defendants by establishing a prima facie case of personal jurisdiction. The allegations in Chipping's complaint will be taken as true and all factual disputes will be resolved in Chipping's favor.

---

[13] Email from Sherri Fleming, Attorney, Fleming Law Firm, to Gene Parrish (Dec. 27, 2010), Exhibit G to Notice of Errata, docket No. 14-8, filed October 6, 2011.

[14] Complaint at 5.

[15] *Id.* at 5–6.

[16] *Id.* at 6.

[17] Motion to Dismiss at 1.

[18] *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984) (citations omitted); *see also Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004) ("The burden of establishing personal jurisdiction over the defendant is on the plaintiff.").

[19] *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988) (internal citations omitted).

To obtain personal jurisdiction over a defendant in Utah, the defendant must have "minimum contacts" with Utah.[20] The plaintiff can show this by proving the defendant either (1) "has 'continuous and systematic general business contacts with [Utah]'" (general jurisdiction), or (2) "has 'purposely directed' his activities at residents of [Utah]" (specific jurisdiction).[21] Chipping does not allege there is general jurisdiction over Defendants in this case. Therefore, Chipping must show Defendants had sufficient "minimum contacts" for purposes of specific jurisdiction.[22]

### Specific Jurisdiction

"Whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action is determined by the law of the forum state."[23] To establish jurisdiction in Utah, the plaintiff must show that "the defendant has 'purposely directed' his activities at residents of the forum."[24] That is, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State."[25] Specific jurisdiction cannot be based on "random, fortuitous, or attenuated contacts."[26]

In Utah, the specific jurisdiction inquiry involves a two-part test:[27] (1) whether the plaintiff's claims arise from one of the activities listed in the state long-arm statute; and (2)

---

[20] *Bell Helicopter*, 385 F.3d at 1295.

[21] *See id.* at 1296 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984) and *Burger King v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)).

[22] *See Pohl, Inc. of Am. v. Webelhuth*, 201 P.3d 944 (Utah 2008).

[23] *Rambo*, 839 F.2d at 1416; *see Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) ("[A] plaintiff must show that jurisdiction is legitimate under the laws of the forum state.").

[24] *See Bell Helicopter*, 385 F.3d at 1296 (applying Utah law) (quoting *Burger King*, 471 U.S. at 472–73).

[25] *Bell Helicopter*, 385 F.3d at 1296 (citation omitted).

[26] *Id.*

[27] The Utah Supreme Court unequivocally rejected all other tests in *D.A. v. State (In re W.A.)*, 63 P.3d 607, 612 (Utah 2002):

whether the defendant's contacts with the forum are sufficient to satisfy the due process clause of the Fourteenth Amendment.[28] In short, to have specific jurisdiction over Defendants in this case, Chipping must show that (1) a state statute permits jurisdiction, and (2) the exercise of jurisdiction satisfies federal due process.[29]

### 1. Utah's Long-Arm Statute Permits Jurisdiction

Under Utah's long-arm statute, transacting business in Utah or causing tortious injury in Utah give rise to specific jurisdiction.[30] Chipping has satisfied this first part of the two-part specific jurisdiction test by alleging that Defendants engaged in at least one of these activities.

---

> The proper test to be applied . . . involves two considerations. First, the court must assess whether Utah law confers personal jurisdiction over the nonresident defendant. This means that a court may rely on any Utah statute affording it personal jurisdiction, not just Utah's long-arm statute. Second, assuming Utah law confers personal jurisdiction over the nonresident defendant, the court must assess whether an assertion of jurisdiction comports with the due process requirements of the Fourteenth Amendment.

*Id.* (emphasis omitted). *See also Pohl*, 201 P.3d at 950 (applying two-part test).

[28] *See Pohl*, 201 P.3d at 950.

[29] *See id.* (applying two-part test).

[30] *See* UTAH CODE ANN. § 78B-3-205 (2011). The statute in its entirety provides:

> Notwithstanding Section 16-10a-1501, any person or personal representative of the person, whether or not a citizen or resident of this state, who, in person or through an agent, does any of the following enumerated acts is subject to the jurisdiction of the courts of this state as to any claim arising out of or related to:
>
> (1) the transaction of any business within this state;
> (2) contracting to supply services or goods in this state;
> (3) the causing of any injury within this state whether tortious or by breach of warranty;
> (4) the ownership, use, or possession of any real estate situated in this state;
> (5) contracting to insure any person, property, or risk located within this state at the time of contracting;
> (6) with respect to actions of divorce, separate maintenance, or child support, having resided, in the marital relationship, within this state notwithstanding subsequent departure from the state; or the commission in this state of the act giving rise to the claim, so long as that act is not a mere omission, failure to act, or occurrence over which the defendant had no control; or
> (7) the commission of sexual intercourse within this state which gives rise to a paternity suit under Title 78B, Chapter 15, Utah Uniform Parentage Act, to determine paternity for the purpose of establishing responsibility for child support.

5

*Transacting Business in Utah*

Chipping alleges that Fleming and the law firm "transacted business in the State of Utah" by sending "communications that, on their face, were directed to Utah, including at least one letter and several e-mails, and also by participating in phone calls with persons in Utah."[31] Fleming and the law firm admit they sent communications addressed to a Utah resident, but argue they did not "transact business" in Utah because they did not "target" Utah or its residents.[32] Specifically, Fleming and the law firm rely on *Soma Medical International*[33] to argue that they did not "transact business" in Utah because they did not "solicit Plaintiff or Mr. Parrish's business," did not speak or correspond directly with Chipping, and did not "enter into a contract with a resident from the State of Utah for escrow or any other type of service," but merely engaged in "minimal communications" with Parrish regarding Chipping's transfer of funds.[34] Fleming and the law firm also rely on three cases[35] from other districts outside this circuit to argue that Defendants' only had a relationship with LYS, solely to provide legal services for LYS;[36] and Fleming and the law firm contacted Parrish only after Parrish initiated contact with LYS.[37]

---

[31] Memorandum in Opposition to Motion to Dismiss at 13, docket no. 16, filed October 26, 2011; *see also* Complaint at 2.

[32] Reply Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction (Reply Memorandum) at 4, 8, 14, docket no. 21, filed November 14, 2011.

[33] 196 F.3d at 1295.

[34] Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction (Memorandum in Support) at 8–9, docket no. 9, filed October 5, 2011.

[35] Reply Memorandum at 4–6 (citing *St. Paul Fire & Marine Ins. Co. v. Servidone Constr. Corp.*, 778 F. Supp. 1496 (D. Minn. 1991); *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223 (8th Cir. 1987); and *Star Tech., Inc., v. Tultex Corp.*, 844 F. Supp. 295 (N.D. Tex. 1993)).

[36] Reply Memorandum at 5 ("Defendants' relationship was directly with LYS Consulting, and was specifically to provide legal services to LYS Consulting.").

[37] *Id.* at 6 ("Defendants were instructed by their client to communicate with Gene Parrish after Mr. Parrish had already reached out to LYS Consulting and orchestrated an investment opportunity on behalf of Plaintiff.").

Fleming and the law firm's reliance on out-of-district case law is misguided. "Whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action is determined by the law of the *forum state*."[38] Further, the arguments are substantively unpersuasive. Reading the communications in the light most favorable to Chipping, Fleming and the law firm solicited Chipping and Parrish's actions and funds by sending a letter directing the transfer of $250,000.00 to the Defendants' escrow account. Unlike *Soma Medical International*, where the plaintiff "unilaterally" chose to do business with the defendant,"[39] Fleming and the law firm explicitly requested that Chipping's money be transferred to the escrow account. By doing so, Fleming and the law firm solicited business from Utah residents.

Additionally, while Fleming and the law firm technically did not communicate directly with Chipping, they undoubtedly communicated directly with Parrish, Chipping's representative in the transaction. Those communications included a contractual promise that the Defendants would "irrevocably return" the $250,000.00, "within 15 banking days from the time it is received."[40] This communication was not "random, fortuitous, or attenuated."[41]

Fleming and the law firm argue they contacted Parrish only after Parrish initiated contact with LYS, but the law does not focus on who initiated contact. The Utah Code broadly defines "transaction of business within this state" as the "activities of a nonresident person, his agents, or representatives in this state, which affect persons or businesses within the state."[42] In *SII*

---

[38] *Rambo*, 839 F.2d at 1416 (emphasis added).

[39] *Soma*, 196 F.3d at 1299.

[40] Letter from Sherri Fleming, Attorney, Fleming Law Firm, to Gene Parrish (Dec. 25, 2010), Exhibit D to Notice of Errata, docket no. 14-5, filed October 6, 2011; s*ee also* Complaint at 3.

[41] *See Bell Helicopter*, 385 F.3d at 1296 (quoting *Burger King*, 471 U.S. at 475).

[42] UTAH CODE ANN. § 78B-3-202(2); *see also Pohl*, 201 P.3d 944, 952 (explaining legislature's interpretation).

*MegaDiamond*,[43] ASC, a New York company, entered into an agreement with SII, a Utah company, to buy SII's products.[44] ASC failed to pay certain invoices, so SII brought suit against ASC in a Utah court.[45] ASC argued that the Utah court lacked personal jurisdiction because ASC did not "transact" any business in Utah.[46] The Utah Supreme Court disagreed with ASC, holding that ASC "transacted business" within Utah when its efforts were "purposefully directed" toward residents of Utah.[47] The Court did not focus on who initiated the contact, but instead, focused on where the receipt of the offer occurred (Utah), as well as where the "last act" needed to form the contract took place (Utah).[48] The Court explained that the defendant need not physically enter the state to subject itself to the jurisdiction of Utah, but can subject itself to the jurisdiction of the state by making a contract with someone in the state via electronic communication.[49] The Court concluded that "the formation of a contract within a state involving a state resident qualifies as transaction of business for purposes of the long-arm statute."[50]

Fleming and the law firm "purposefully directed" their efforts towards and formed a contract with Chipping, a resident of Utah. Fleming and the law firm agreed that, upon receipt of Chipping's $250,000.00, they would keep $10,000.00 and would "irrevocably return your $250,000.00, to the account you sent it from within 15 banking days from the time it is received, as well as an additional $250,000.00 as a participation fee for your involvement."[51] Fleming and

---

[43] *SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430 (Utah 1998).

[44] *Id.* at 432.

[45] *Id.*

[46] *Id.* at 433.

[47] *Id.* at 435.

[48] *Id.*

[49] *Id.* at 434.

[50] *Id.*

[51] Letter from Sherri Fleming, Attorney, Fleming Law Firm, to Gene Parrish (Dec. 25,2010), Exhibit D to Notice of Errata, docket no. 14-5, filed October 6, 2011; *see also* Complaint at 3.

the law firm knew they were extending an offer to a Utah resident because their letter was addressed to "Mr. Parrish," whose Utah address was present on all letters and emails. Additionally, the "last act" needed to form the contract between Chipping and Defendants—the transfer of the money—occurred in Utah. These activities trigger Utah's long-arm statute.

### *Tortious Injury*

In addition to alleging that Defendants transacted business in Utah, Plaintiff also alleges that Defendants caused tortious injury in the state, thereby triggering Utah's long-arm statute.[52] "[T]o satisfy the long-arm statute requirement [of tortious injury], a plaintiff must allege only that the defendants caused a tortious injury in Utah and that the plaintiff's claims arise out of the tortious injury."[53] "The plain language of the long-arm statute asserts jurisdiction over claim[s] arising out of or related to the causing of *any* injury within this state whether tortious or by breach of warranty. Nothing in the plain language of the statute distinguishes between financial injuries and other injuries."[54]

In *Pohl*, the plaintiff successfully established the tortious injury requirement by alleging that the defendants directed their tortious activity toward Utah and knew their actions would harm the plaintiff in Utah.[55] The court noted: "While it is true that financial injury alone cannot establish jurisdiction because such a rule would lead to the unacceptable proposition that jurisdiction could be established anywhere a plaintiff might locate, the suggestion that financial injuries cannot provide the basis for jurisdiction at all is an oversimplification of the law."[56]

---

[52] Memorandum in Support at 14.

[53] *Pohl*, 201 P.3d at 952.

[54] *Id.* at 950 (internal quotation marks and citations omitted).

[55] *Id.* at 951.

[56] *Id.*

After discussing Utah precedent, the court concluded tortious injury could indeed be shown by a diminished bank account, but only if "the defendant had directed its tortious activity at Utah."[57]

Like the plaintiff in *Pohl*, Chipping alleges that the Fleming and the law firm caused a tortious injury in Utah and that his claims arise out of the tortious injury.  Particularly, Chipping alleges he was financially injured when he did not receive the money he was promised.  Further, Chipping alleges that Fleming and the law firm knew they were directing their activity at Utah.  Thus, Chipping has satisfied the long-arm statute's tortious injury requirement.

   2. **Fleming's and the Law Firm's Contacts with Utah Are Sufficient to Satisfy the Due Process Clause of the Fourteenth Amendment**

"It is well established that jurisdiction must result from minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[58]  While "letters are not necessarily sufficient in themselves to establish minimum contacts,"[59] "[i]n proper circumstances, even a single letter or telephone call to the forum state may meet due process standards."[60]  "[T]he exercise of jurisdiction depends on the *nature* of those contacts."[61]

In *Hafen v. Strebeck*,[62] Sid Strebeck, a New Mexico resident, owed John Hafen, a Utah resident, approximately $188,000.00.[63]  Strebeck and Hafen communicated by phone regarding the debt, and Strebeck assured Hafen that the obligations would be satisfied.[64]  Strebeck

---

[57] *Id.*

[58] *SII MegaDiamond*, 969 P.2d at 435 (internal quotations omitted).

[59] *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995).

[60] *Rambo*, 839 F.2d at 1418 (quoting *Burger King*, 471 U.S. at 475 n.18).

[61] *Rambo*, 839 F.2d at 1418.

[62] *Hafen v. Strebeck*, 338 F. Supp. 2d 1257 (D. Utah 2004).

[63] *Id.* at 1258.

[64] *Id.* at 1259.

subsequently sent Hafen a letter that confirmed these assurances.[65] Strebeck eventually failed to fulfill his obligations to Hafen, so Hafen brought suit in a Utah court.[66] Strebeck moved to dismiss Hafen's complaint for lack of personal jurisdiction, arguing that his few telephone calls and one letter to Hafen in Utah were "insufficient to establish the minimum contacts required under the Due Process Clause."[67] The court disagreed with Strebeck and concluded that jurisdiction over Strebeck in Utah "comports with traditional notions of fair play and substantial justice" because the claims at issue arose directly from Strebeck's communications with Hafen in Utah and there would be no cause of action "[b]ut for the fact of Strebeck's representations" to Hafen.[68] The court also rejected Strebeck's argument that it would be unfair "to require him to defend himself in a forum in which he has only a slight connection."[69]

Like Strebeck, Fleming and the law firm communicated with a Utah resident just a few times. However, it is not the quantity of the communications that matters, but the quality and nature of them.[70] Like Strebeck's communications, Fleming's and the law firm's communications were directed at a Utah resident in order to "purposefully avail [themselves] of the privilege of conducting activities within the forum State."[71] Indeed, if it were not for Fleming's and the law firm's representations to Parrish and Chipping, there would be no cause of action. It was Fleming's and the law firm's communication that guaranteed return of Chipping's money "within fifteen banking days" and it was Fleming's and the law firm's communication that instructed Chipping to send the money. These communications give rise to Chipping's

---

[65] *Id.*

[66] *Id.*

[67] *Id.* at 1261.

[68] *Id.* at 1263.

[69] *Id.*

[70] *See id.* at 1261.

[71] *Id.*

11

claims. That Fleming and the law firm appear in a Utah court to respond to these allegations comports with traditional notions of fair play and substantial justice.

For the foregoing reasons, jurisdiction is proper in Utah under the Due Process Clause and Utah's long-arm statute.

## ORDER

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss[72] is DENIED.

Dated this 9th day of April, 2012.

BY THE COURT

_____
District Judge David Nuffer

---

[72] Motion to Dismiss, docket no. 8, filed October 5, 2011.